Morning. David Cole for Appellant Blue Earth Biofuels. May it please the Court. As you were looking at the excerpts just now, I was looking at the record in this case and preparing, and there are a lot of trees. In my limited time today, I wanted to speak a little bit to a couple of forest points. I think they shed some light on how these exhibits come together and these cases come together. My kids like to play Monopoly, and there's that magic card you get, the get-out-of-jail-free card. It gives you all sorts of advantages in the game. I think the operating agreement that was entered by parties in this case has become a little bit of that. The argument made by the defendants in this case, ultimately accepted by the district court, fairly stated goes something like this. There was a joint venture. There was a memorandum that commemorated what that venture was about and what we would be doing. Time went on. An operating company was created. A new entity came in on the utility side to be a part of that. At that point, the defendant's position is, HECO's responsibility as a member of the original joint venture with my client, Blue Earth, ended. It gets out of jail free. Our position on this appeal, both under the common law of fiduciary duty, the first point in our brief, and under the substantive law of novation, which is the second point in our brief, you don't get that. When you enter into a joint venture, whether commemorated by MOU or commemorated informally in a conversation, the cases have many different fact patterns. You have a continuing duty. By Hawaiian statute, it is the same duty that a partner owes to a fellow partner. By common law, throughout the country, primarily the left case from California that's been cited in many places, but a general uniform pattern, it continues for the duration of the venture and it continues after the venture ends. Well, to me, counsel, the get out of jail free card, to use your analogy, isn't really the operating agreement itself, but it's really the MOU read in conjunction with the two subsequent agreements. If there is no ambiguity in construing those three agreements together as to what was intended, then it would seem to me the court then could end the inquiry there and not go into any of the numerous extrinsic pieces of evidence that you rely on. So do you agree that that's the first step in looking at the novation argument to see whether the parties intended and agreed that the subsequent agreements would supersede the MOU, just to kind of read the three documents together to see whether it's clear what the parties intended? Right. The court is absolutely right that we begin the analysis of novation with intent and the starting place for intent is what the documents say. But the case law that looks at that and applies that does not blind itself to what the parties were saying at the time. And in this situation, there's a label that's been tossed around in the briefing about subjective evidence, but I would submit to the court that the most probative evidence outside the scope of the contract is fairly considered as evidence of intent, both as course of performance by the parties, pursuant to the MOU and the operating agreement, and as evidence of the commercial context in which the documents are written. You're not trying to inject ambiguity by looking at that evidence. You're simply trying to understand what the words meant in the commercial context in which the parties were operating. Example, every party to this case, at some point after the entry of the operating agreement, there are different individuals, different times, but there is a document that says something that acknowledges the MOU exists and there are obligations under it. Why doesn't the operating agreement say something about the MOU if it's intended to get rid of the MOU and we know that everybody involved knew what it was, knew that it had consequences, knew that it had legal effect, took the time to talk to each other and write to each other about it. How can you write that term in? That creates a serious question of intent and the courts look at that issue, look at that kind of evidence using different labels to allow you to consider it. It could also easily be that they can look at these documents and decide they are ambiguous by their silence. The agreement, in the operating agreement, the merger clause refers to the parties to that agreement. HECO is not a party to that agreement. HECO is a party to the MOU. Is it subsumed? Is it not? You can look at the definitions. You can probably read it a couple of different ways. That alone could inject ambiguity with this other evidence surrounding it. It's a question you can put different labels on it, but there's more to this picture than simply a few clauses and a few different contracts. Counsel, on the question of intent, why didn't the cross motion for a summary judgment filed by HECO and MECO put Blue Earth on notice of the novation agreement and why wasn't Blue Earth's argument at the summary judgment hearing sufficient to address novation? What is the prejudice to Blue Earth? I think the record that was ultimately created at that hearing shows there was not a novation because the key documents are in evidence to explain the context in which you read the contracts. So I think there's the court can analyze it by going straight to the substance. But procedurally, it was not pleaded. The ALOHA, who didn't have a dog in the fight, had in fact pled novation, but they did not plead novation. It is a separate legal doctrine, and there are separate legal issues. The argument that they were making, and my colleagues were making in response to the summary judgment for that hearing, that they thought they were making until two days before was the parties are different. In reply, they come back and say, oh, well, the parties are different. It's a novation. That's a different doctrine, a different concept, different body of case law. So there would have been more evidence introduced. There would have been more case law along the lines that we submitted in our appellate brief. But why shouldn't we find that Blue Earth assented to novation? Assent is evident in the plain language of the MOU and the BMB, but Blue Earth's subsequent conduct also shows assent. It considers selling its share, which is inconsistent with the exclusivity argument made in the MOU. I've seen that argument about sale in the HECO briefs, and I've never quite gotten it. It derives from a part of the operating agreement that talks about your sale of your interest, and it goes on for a few pages. But the way you sell an interest under the operating agreement requires assent of the board of directors. There's a different term in the document, but the managing board, who is in turn appointed by Blue Earth and UBC. In other words, Blue Earth is involved. Blue Earth has a say, and UBC has a say. So before you can go sell your interest, somebody involved with either side of the venture has to do something, has to assent in some way, or it can't go forward. They at least have to be informed about it. So I think that discussions by people about selling are not inconsistent, what it says there, or inconsistent with any obligate joint venture partner. You can go to your partner and say, I'd like to sell out to somebody else, and the venture can then make a judgment about that. But practically, the one overarching thing in all of this evidence in the documents about why I think there's no evidence of assent is it doesn't make any sense. Here you have a joint venture of the utility and the Blue Earth people. They come together, and they finally make the operating company. Why at that moment would you say to the utility, go ahead, don't be exclusive, do another deal? You dumped us off on this sub. Now you can desert us. Now you can actively work against us. You can recruit other investment partners. You can do secret deals. That's fine with us. That doesn't make sense. Their argument is the minute they finally took the big step, created the operating company, figured out how to operate it, signed up the agreements, HECO can step away then. That's when you need HECO the most. That's why the MOU is written that way. It's talking about the continuing development of the project and the continuing obligations of HECO and Blue Earth, because otherwise it's meaningless. You have an unregulated subsidiary with no support and potentially being backstabbed by its parent, who might have whatever other interests it might have. And that, I think, is the critical big picture question that animates looking at all of the evidence and those documents about assent. Why? Why would you let HECO go? Why would HECO want to be let go if not to do something against the interests of its joint venture partner, which, of course, is what happened here. So I think that that insight then coupled with the specific pieces of evidence is what comes together to ultimately answer the question about assent. It's true that there's a lot of e-mails sent back and forth among parties after this. There are some that talk about the MOU in passing, some that talk about subjective intent. Not every sentence of every document is necessarily ultimately admissible or appropriate on the question of intent, but there's an awful lot of discussion and an awful lot of talk about the MOU. And the idea that in that environment, where it just doesn't make any sense for us to have assent into it and then keep talking about it, it at least raises a question of fact. It at least creates a situation where you wonder. If no one put MOU in the document, no one in real time said the word novation, at the trial of this case, someone would come to the stand and say, it was a novation. We meant to get rid of all the parties, start over again, sweep everything clean. You go back and say, how do you explain this document? How do you explain that? That back and forth and that dialogue that you see in the real world back and forth around that time, that's fact issue stuff. At the very least, it raises questions of credibility about the people who would come and say there was a novation. Oh, we meant to get rid of everything and wipe the decks clean when they're talking about the MOU in the same time period. A jury should make that determination, not the cold record of a summary judgment case. I think I'd like to ask you whether you wanted to reserve any of your time for rebuttal. I see I'm under five minutes. There's only one other point I wish to make, and I'd be happy to reserve the rest and respond as need be. There is an argument made in the APOE's brief for alternative ground for affirmance based on the MOU not being binding, and here I think the district court's analysis is dead on the mark. There is no language in the MOU that says it isn't binding, which is often seen in those things. It's unusual. That's exceptional. It distinguishes the cases. I think it settles the question of whether there is a binding obligation there or not. I'll reserve the rest of my time for rebuttal. All right. Thank you, counsel. Good morning. May it please the Court. I'm Paul Alston. I represent Maui Electric, Hawaiian Electric, and Dr. Carl Stockoff. And I will take ten minutes this morning, leaving five minutes for Mr. Hare, who represents Aloha Petroleum. Judge Ezra is a very careful judge, not prone to giving summary judgment freely. In this case, he granted summary judgment with respect to all 11 claims. They've abandoned eight and are pursuing only three. Judge Ezra was right on the three, just as he was right on the eight that they've abandoned. With respect to the issue of the novation, the fact is that if you read the MOU, it clearly is a preliminary agreement that anticipates upon the formation of an unregulated subsidiary, the formation of a fully formed agreement. That was done. We have a seven-page MOU that is converted into a 55-page-plus set of documents, including both the operating agreement and the investment agreement, which are, by their own terms, integrated agreements, and which, if you review the exhibits to the operating agreement, reflect a carryover of the obligations that were allocated among the parties in the MOU. And which were then allocated for the exact same business purposes in the operating agreement. Mr. Alsop, why weren't your clients required to raise novation in their reply brief? Why wasn't Blue Earth prejudiced by this fact? Very simply for this reason. The notion that there were superseding agreements, and novations are in the case law referred to from time to time as superseding agreements, was vehemently and vigorously argued from the very beginning. That precise label, novation, was not used. But the concept that everything that the parties had agreed to in the MOU was superseded and supplanted or substituted for by the operating agreement was the focus of our motion. So, you know, the exact label may not have been used, but the concepts were argued. And all the case law requires is fair notice of the nature of the defense. And we submit that they were on fair notice. They then proceeded at the hearing itself to argue for an hour with a PowerPoint presentation that addressed the issue. They then had literally months between the time of the argument and the time of the decision to seek the opportunity to provide supplemental briefing if they thought it was necessary. That was something they'd not been shy about on other occasions in the case. They had the opportunity to do whatever they thought was necessary if they thought, in fact, at the time that they had been prejudiced in any manner. But that idea of prejudice comes up only after the fact, after they've lost. Well, opposing counsel seems to suggest this is a question of facts and that we shouldn't be handling this on summary judgment. What is your response? It is not. Whatever the cases may be and may say in other states, the Hawaii Supreme Court in the Kaneda case has said that the issue of whether there is an ovation can be addressed from the party's actions, not just their words. With respect to the words, in some cases, there are unquestionably factual disputes. But here, the documents themselves are so clear and the effect of the operating agreement and the investment agreement taken together is so precisely developed as the replacement for the MOU, as the substantive agreement that is contemplated in the MOU, that there is really no doubt about that. I think going to the point that Judge Nguyen raised earlier, if you look at the documents side by side, you see that the MOU contemplates a subsequent agreement that will definitively outline the party's rights and responsibilities and suggests that when that happens, the rights and obligations may be transferred. And you then find that the parties negotiated this comprehensive agreement covering exactly the same ground and replacing in its entirety the earlier understanding that's outlined in the MOU. There was no need to mention the MOU in the operating agreement because the MOU says that it's entered on behalf of HECO until an unregulated subsidiary can be performed. And it then goes on to say in the operating agreement that all prior agreements have been replaced in their entirety. So I think the detail of the operating agreement demonstrates that it's the superseding agreement. And that was our position all along. Regardless of what label you put on it, whether you call it an ovation or you call it a superseding agreement, you end up in exactly the same place. Thank you. Mr. Dalton. Yes, Judge Ferguson. Your opponent's going to be up in a minute rebutting. What, in your view, would be the bottom line of this Court's decision if we agree with you? Why don't you tell us that so that he can tell us why you're wrong? Fine, Your Honor. I would say first that Judge Ezra had it exactly right with respect to the novation argument and to the absence of any prejudice with respect to that argument. Judge Ezra was in the best position to analyze it. The issues were argued again and again because they came back on that point not once but twice, and twice Judge Ezra both rejected them on procedural grounds and looked at the merits of their argument about whether there was an ovation and found no merit to that. So that's the first point. The second point is with respect to the argument that there was a breach of fiduciary duty. Judge Ezra was exactly right in saying that we prevailed on that argument. Their position is that when we've moved for summary judgment on that entire fiduciary duty claim and in response they offered just two paragraphs talking only about how the fiduciary duty claim had merit because of the nondisclosure agreements. It was Judge Ezra's obligation then to comb the record, to find out what other arguments they might have made in the past or that they might make again. And it's clear that that is not his obligation. It was their duty to mount their arguments against our motion, and having offered only a lame and half-hearted defense of that fiduciary duty claim, they cannot seek relief from this Court any more than they could have gone back to Judge Ezra and said, wait, wait, we have other arguments we want to make. We have other arguments that you should consider. They can't ask for reconsideration based on theories or facts that they could have presented to Judge Ezra, and they certainly can't get that kind of relief here. And then lastly, Your Honor, with respect to the unfair competition claim, it's important to recognize that that claim was injected into the second amended complaint. It was restated in the third amended complaint. That was more than two years after the case was filed. They had every opportunity at that point two years on to state their claim following the clear teachings of the Hawaii Supreme Court in the Four Seasons case and the HMA, the Hawaii Medical Association case. They failed. They then got permission to make a supplemental pleading which would bring forward new facts, ones that came after their third amended complaint. And instead of honoring the limits of Rule 15D, they came in with something that went back to the beginning of the party's relationship and tried to lard into the record a lot of historical things that they hadn't put into their third amended complaint. Magistrate Judge Chang and Judge Ezra both rejected that effort to try to cure literally a few months before trial something that they could have done much earlier, and this Court should not give them yet another bite at the apple of stating that claim. So that's the punchline of our presentation here. Thank you. All right. Thank you, counsel. We'll stop the clock. I understand that time's running short, but I'll be indulgent. And if my colleagues agree, I'll give you a couple of minutes to present your arguments as well, counsel. I believe, Your Honor, Mr. Hare does have five minutes. I only took ten. Oh, is that right? Was ten on the clock? Yes, ten was on the clock. All right. Thank you. Good morning. Michael Hare on behalf of the appellee, Aloha Petroleum. Earlier in the argument submitted by counsel for the appellant, he referred to Aloha as not having a dog in the fight. Well, Aloha very much has a dog in the fight if dog fighting were legal in this state, which it isn't. So I'll carefully point out, Your Honor, that Aloha came to this. It was invited, the facts show, by HECO to consider participation in this project. It, in the course of natural due diligence, sought documents. Interestingly enough, stated in the record, in response to the request for due diligence documents, beginning June 30 running through approximately July 7th or the 8th, there was a flood of documents that was provided by Blue Earth. None of those documents included the MOU. It included the operating agreement. The operating agreement referred to the investment agreement. So we have, in the course of due diligence, some conduct that is quite illustrative of what, unencumbered by threats of litigation or the perception that the project was going down the tubes, Blue Earth acted in a certain way. Important documents, documents that relate to the project, give them to us. No MOU, but the operating agreement. So Aloha Petroleum looks at the operating agreement, looks at the investment agreement, and sees some key language. Perhaps the most important language that can be quickly identified is in the investment agreement. And that's found in excerpt of records 349, a particular page. And at 6.13, there's a provision that one might expect in the course of drafting documents that are considered important, certainly important enough to distribute to a potential participant in this project by Blue Earth. It says, this agreement and the documents referred to herein, and included in that by schedule was the operating agreement, constitute the entire agreement between the parties hereto pertaining to the subject matter hereof, and any and all other written or oral agreements relating to the subject matter hereof existing between the parties hereto are expressly canceled. So with that language, reasonably diligent, reasonably inquiring, due diligent participant would have some assurance. One would reasonably think that if there's items that came before this relating to this project, they have been canceled. So the focus I would submit, even by a business person at the time of being invited into this project, was a type of approach that the court indicated in a question early on. Wouldn't you look at the written documents that purport to govern this relationship? And you would. So the documents that are given are the operating agreement and the investment agreement, but no MOU until several weeks later, when at that point it becomes clear from the record that people are exchanging emails in a self-serving manner. From a contemporaneous standpoint, they may be occurring then, but from a standpoint of giving insight into what the parties attended, the operating agreement and the investment agreement really provide that answer. And in both instances, they purport to be the entire agreement between the parties. So in terms of the dog in the fight, plaintiff alleges that a lawyer interfered with the MOU. If the MOU was novated, or if indeed, as we've submitted as an independent ground for affirming the district court, the MOU is really not a binding agreement contract at all, then there's no interference. And to the extent that there's other counts in the complaint that refer to interfering with the agreement between the parties that supposedly reflected in the MOU, those fall by the wayside too. The importance of looking at the MOU language, and the importance of looking at the language in the two documents that are clearly contemplated in the MOU to step in and take over. In the operating agreement, again, if one looks at that, it has a statement of purpose. The statement of purpose is identical to the statement of purpose stated in the MOU. Well, the fact that it covers the same topic area, I think it's a good fact for MECCO and HECO and for you, your client. But counsel's relying on the fact that it doesn't specifically reference the MOU. It's not explicit in its superseding language. And I think he hangs a good portion of the argument on that. It certainly would have kind of created a slam dunk if the entire agreement language in both the operating agreement and the investment agreement specifically mentioned the MOU. However, when it says this agreement and the documents referred to herein constitute the entire agreement between the parties here with respect to the subject matter, I would respectfully submit that one looks at this agreement and then just the documents, and by process of exclusion, the MOU is not referenced. So it sort of turns things on its head, I think, submit, that because it's not mentioned, it therefore is not superseded or canceled. When the document written by the authors and signed by the parties say that it's been canceled, by implication if not expressed mention when it says all other documents that existed before. So, your Honor, I would submit that it's irrelevant that it doesn't specifically mention the MOU. And it's also somewhat reflective of did the parties really think at the time that they entered into the operating agreement and the investment agreement that the MOU was a binding contract? Again, going to the argument that we respectfully submitted, there's a ton of language in the MOU that suggests that it's preliminary understandings intended to anticipate future binding agreements. It's replete with subject to language. All of this suggests a great deal of caution in finding this a binding agreement. And so, to me, it's not terribly surprising that the entire agreement merger language would not pick out any of the documents in particular that predated this to say it was superseded and canceled when all of them were by its terms. All right. Thank you, counsel. Does anybody have any additional questions? Judge Nelson? All right. Thank you very much, counsel. It's a good jury argument. It's a good argument about contemporaneous actions as opposed to later actions when people became tainted by some sort of self-serving motive. There's not a case that makes that distinction. That's a factual argument that would be made to a finder of fact. The legal argument to get to the bottom line that they asked this court to adopt is to find that the operating agreement not only disclaims the MOU without ever mentioning it in a way that no one has ever explained why it makes any sense, but also disclaims fundamental common law duties and statutory duties owed by joint venture participants to each other without ever mentioning those either. Where do we argue about these duties? Supplemental Record Exhibit 105 and 106 where we argue Blue Earth is claiming that the HECO defendants circumvented Blue Earth and by doing so contravened other documents in the case. We argued that their hiding things from us, and HECO, hiding things from us and doing things against our interest violated their duties towards us. Independent of whether there was an ovation, independent of the party's contractual niceties, there was a joint venture, duties were triggered, and there is evidence in this record that those duties were violated. Counsel, one of the problems I have with your argument, I look at the MOU in Excerpt of Record 1336. The purpose of this MOU is to memorialize certain preliminary understandings between the parties with regard to their affiliation and business relationship with each other in anticipation of future formal agreements. And then on page 1338, the specifics of the equity allocation will be further detailed in the formal investment agreement to be negotiated and agreed upon. And then again, well, it goes on and I have a problem with your argument. It certainly begins by talking about the purpose of this is to get some preliminary understandings in place. And at the end it says as to specifics of operating and income, and we're going to do some agreements about that. But in between, there's no language that says we don't intend to be bound. There's a termination provision where you can cancel this MOU, which you certainly don't need if you don't have binding obligations, and people commit to do things. They talk about giving each other money. They talk about exchanging information mutually and keeping it confidential. There is an exchange of consideration, both immediate and anticipated, for those preliminary promises, which is what the district court said. So there's things they're going to agree on down the road, but there are agreements about the foundation that's going to be built going forward to those agreements that are presently binding, such as funding, such as keeping things confidential, such as dealing with each other in a certain way. And the relevant page, my excerpts are a little bit different. I have supplemental 87, but the mutual responsibility section is clearly, it's just a piece, right, it's part of a larger agreement, but it's talking about a progress towards goals and HECO and Blue Earth working together towards those goals. Taking HECO out of that picture when the operating agreement is signed, why would that be eliminated? HECO and Blue Earth should continue to work together. The common law requires it, and it makes sense that they should because they committed to do it back in this agreement. It doesn't make any sense. It's something at the very end, as you point out, to deal with the mechanics of how the agreement is going to be implemented and all the things that corporate lawyers like to put in documents would go back and change that fundamental description on that earlier page of the difference of the obligations the parties are undertaking. The merger clause, by the way, in that agreement, talks about the parties to that agreement. It doesn't mention HECO, and the concept of exclusivity is mentioned nowhere as to HECO in any way, leaving it unchanged, I would submit, from what it had been at the time of the MOU. One other item occurred to me, Your Honor, in your question about what happened at the hearing. There's an order denying reconsideration that notes some of the evidence we offered and says it is probative, but it's not strong enough for me to change my opinion. I think that's pretty telling language that suggests, had it been part of an integrated presentation, it might be a bit different. I don't have the exact citation, but it's pretty obvious in the docket sheet which one that is. Your time has run short, so let me have you just briefly, before you wrap up, address the breach of fiduciary claim. Because earlier on in the litigation, the trial court identified for you a possible statutory-based theory of recovery on that claim, but it didn't seem to me that that was argued in opposing summary judgment, which really rests more on the NDA, and that would be a contract-based theory. So understandably, the trial court didn't address that in his order on summary judgment. So have you waived that argument? I think what happened was the court made observations about the statute in its early temporary injunction type ruling. Then there's a motion for summary judgment on fiduciary duty later, and that motion says fiduciary duties were not breached because NDAs were not violated, contractual obligations. It's couched in that language. So there is rebuttal back to that argument, and then there's the rebuttal that I just directed the court to in that page that goes more broadly. So I'm not sure the statute gets cited in that, but the concept that you've defined the issue incorrectly, it's bigger, I believe is fairly stated. That's what kind of threw me off about your argument a little bit, having just not too long ago sat on the trial court. I would expect an issue like that to be specifically identified and argued because there's also the economic loss rule that plays into that. So if it's not specifically raised, I would think that as a trial judge that you would need to address it. The issue of whether there are duties, extra-contractual duties, I believe is fairly set out in the briefing of the pages I identified, and there's not a waiver at that point. And I think so. Thank you very much. In addition to the other points in the reply, I think that's the page I suggested the court key in on. Thank you. Judge Ferris, do you have any additional questions? Judge Nelson? All right. Thank you very much, counsel. For good arguments on both sides, the case of Blue Earth Biofuels v. Hawaiian Electric Company in Caddell is submitted for decision by the court. And the next two matters, U.S. v. Manipusan and U.S. v. Kalani, have been previously submitted as well. So the court is adjourned for the day. All rise.
judges: Farris, Nelson, Nguyen